## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS VOGEL,                 ) | |
|                     ) | |
|       **Plaintiff,**     ) | |
|                     ) | |
| **vs.**                    ) | **CIVIL NO.  07-21-GPM** |
|                     ) | |
| **MERCK & CO., INC., WALGREEN CO.,** ) | |
| **d / b / a   W A L G R E E N S ,   a n d** ) | |
| **AMERICAN DRUG STORES, INC., d/b/a** ) | |
| **OSCO DRUGS,**         ) | |
|                     ) | |
|       **Defendants.**     ) | |

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, Chief District Judge:**

This matter is before the Court on the motion for a stay (Doc. 3) and the motion for a hearing (Doc. 16) brought by Defendant Merck & Co., Inc. ("Merck") and on the motion for remand to state court brought by Plaintiff Thomas Vogel (Doc. 12).  Merck's motions are **DENIED**.  Vogel's motion is **GRANTED**, and this action is **REMANDED** to state court on the basis of lack of subject matter jurisdiction and a procedural defect in removal.

### INTRODUCTION

This case is a successor to *Rutherford v. Merck & Co.*, Civil No. 06-159-GPM (S.D. Ill. filed Feb. 22, 2006).[1]  In the *Rutherford* case Vogel joined with Barbara Rutherford, Edward Miechle, Rachel Garza, Beth Renee Brodhacker, Sandra Zola, Tom Benhoff, Emil Smith, Connie Testa, and

---

1.     The Court is entitled, of course, to judicially notice the court file in a related case, *see Cassens v. Cassens*, 430 F. Supp. 2d 830, 833 n.1 (S.D. Ill. 2006), although, as a practical matter, the complaint in the *Rutherford* case is also the complaint attached to the notice of removal in this case.  *See* Doc. 2, Ex. 1.

Darrell Lane to bring suit against Merck for personal injuries allegedly caused by Vioxx, a prescription pain medication manufactured by Merck. In addition to Rutherford's claims against Merck, she also asserted claims against Defendant Walgreen Co. ("Walgreens") and Defendant American Drug Stores, Inc. ("Osco Drugs") based on prescriptions for Vioxx that Walgreens and Osco Drugs allegedly filled for her; similarly, Miechle asserted, in addition to his claims against Merck, claims against Osco Drugs based on prescriptions for Vioxx that Osco Drugs allegedly filled for him. The *Rutherford* action was filed originally in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, on January 13, 2006, then removed by Merck to this Court in federal diversity jurisdiction on February 22, 2006. On April 21, 2006, the Court remanded the *Rutherford* case to state court for lack of subject matter jurisdiction. *See Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842 (S.D. Ill. 2006).

On January 3, 2007, the Madison County circuit court entered an order in the *Rutherford* case providing, in pertinent part, that "the claims of plaintiffs Rutherford, Miechle, Garza, Brodhacker, Zola, Vogel, Benhoff, Smith, and Testa are severed." Doc. 2, Ex. 2.[2] On January 10, 2007, Merck removed Vogel's claims to this Court in diversity jurisdiction for the second time. Although after removal the case initially was assigned to United States District Judge Michael J. Reagan, on January 16, 2007, it was reassigned to the undersigned United States District Judge, in conformity with the Court's policy that related cases, in this instance *Rutherford* and this case, should be concentrated before the same judge. *See Smith v. Check-N-Go of Ill., Inc.*, 200 F.3d 511, 513 n.1 (7th Cir. 1999); *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 839 (7th Cir. 1999); *Anderson v.*

---

2.   It is not clear why the state court's order contains no reference to the claims asserted against Merck by Darrell Lane.

*Cornejo*, 199 F.R.D. 228, 262 (N.D. Ill. 2000).[3]  Vogel now has moved for remand of his claims to state court.  Merck in turn has moved for a stay of this case pending transfer of the case to a multidistrict litigation proceeding and for a hearing on Vogel's motion for remand.  Having reviewed the submissions of the parties, the Court discerns no merit in Merck's request for a stay or a hearing and concludes this case is due to be remanded to state court.

**DISCUSSION**

**A.      Legal Standard**

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  A federal court may exercise jurisdiction in diversity if all parties to an action are of completely diverse citizenship, that is, no plaintiff is a citizen of the same state as any defendant, and an amount in excess of $75,000, exclusive of interest and costs, is in controversy.  *See* 28 U.S.C. § 1332; *Johns v. Johns Mitchell*, No. 06-924-GPM, 2007 WL 496391, at *2 (S.D. Ill. Feb. 13, 2007).  The party seeking removal has the burden of establishing federal jurisdiction.  *See Yount v. Shashek*, No. CIV. 06-753-GPM, 2006 WL 4017975, at *1 (S.D. Ill. Dec. 7, 2006).  "'Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum.'  Put another way, there is a strong presumption in favor of remand."  *LaRoe v. Cassens & Sons, Inc.*, No. CIV. 06-713-GPM, 2006 WL 4018917, at *1

---

3.    At the same time Merck removed Vogel's claims from state court, it also removed to this Court the claims of Smith, Brodhacker, Zola, Testa, and Benhoff.  Consistent with the Court's policy regarding related cases, the claims of Smith, Testa, and Benhoff were reassigned by United States District Judge David R. Herndon to the undersigned District Judge; similarly, the claims of Brodhacker and Zola were reassigned by District Judge Reagan to the undersigned.

Page 3 of  19

(S.D. Ill. Nov. 30, 2006) (quoting *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)). *See also Dudley v. Putnam Inv. Funds*, Civil No. 06-940-GPM, 2007 WL 329129, at \*8 n.6 (S.D. Ill. Feb. 1, 2007) ("[T]he Court is required to apply the removal statutes strictly, with a presumption in favor of remand, … and the Court has not been empowered by Congress … to fashion equitable removal solutions to procedural complexities[.]").

### B.    Existence of Diversity Jurisdiction

As discussed, the basis for federal subject matter jurisdiction in this case is diversity, so that complete diversity of citizenship is required.  However, it appears from the record that while Merck is a New Jersey citizen, Vogel, like Walgreens and Osco Drugs, is an Illinois citizen.  *See* Doc. 2, Ex. 1 ¶ 7, ¶ 13, ¶ 15, ¶ 16.  Merck argues that diversity of citizenship is complete because the claims asserted against Walgreens and Osco Drugs in the *Rutherford* case were severed from Vogel's claims in state court.  This requires the Court in turn to examine whether a true severance of claims occurred in state court.

The term "severance" is a word of sometimes indeterminate meaning.  As the United States Court of Appeals for the Seventh Circuit recently explained, when a true severance of claims occurs under Rule 21 of the Federal Rules of Civil Procedure, each severed claim "proceeds as a discrete unit with its own final judgment, from which an appeal may be taken."  *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 441 n.17 (7th Cir. 2006).  Conversely, when a "severance" amounts merely to an order directing separate trials as to the claims or parties in a case, *see* FED. R. CIV. P. 42(b), a judgment that disposes of fewer than all of the claims or parties is interlocutory and unappealable absent entry of the appropriate certification under Rule 54(b) of the Federal Rules of Civil Procedure.  *See Gaffney*, 451 F.3d at 442 n.18.  *See also Sidag*

*Aktiengesellschaft v. Smoked Foods Prods. Co.*, 813 F.2d 81, 84 (5th Cir. 1987) (when severance is effected under Rule 21, "[t]he … severed claim becomes an entirely separate judicial unit, so that a final adjudication of it is appealable, notwithstanding that there remain unresolved claims pending in the original action from which the severance was granted and that no Rule 54(b) certificate has been issued."); *Begalke v. Sterling Truck Corp.*, No. 06-C-186-C, 2006 WL 3091110, at *1 (W.D. Wis. Oct. 26, 2006) (quoting *Gaffney*, 451 F.3d at 442) (severance under Rule 21 "creates two separate actions or suits where previously there was but one," whereas a request for separate trials is cognizable not under Rule 21 but Rule 42(b) and effects merely a "separation of claims in an action in which multiple parties have been joined.") (emphasis omitted).  The confusion that can arise from loose talk of "severance" where in fact only a separation of claims has occurred, together with the impact the distinction can have on appellate jurisdiction, occasionally has provoked judicial frustration.  *See Spencer, White & Prentis, Inc. v. Pfizer*, 498 F.2d 358, 359 (2d Cir. 1974) (speaking of the "tangle of Rules 21, 42(b) [and] 54(b)").[4]

    In the context of removal to federal court in diversity jurisdiction, the mere fact that an order of a state court purports to have "severed" claims generally is insufficient to make a case removable.  *See Nolan v. Boeing Co.*, 919 F.2d 1058, 1067 (5th Cir. 1990) (holding that diversity-defeating parties were not severed from a case so as to permit removal to federal court where Article 1038 of the Louisiana Code of Civil Procedure, pursuant to which the severance was made, authorizes "separate trials" rather than a true "severance"); *Phillips v. Unijax, Inc.*, 625 F.2d

---

4.   By discussing Rule 21, Rule 42, and Rule 54 of the Federal Rules of Civil Procedure, the Court does not mean to suggest that it is evaluating the existence of a severance in this case under federal standards, although doing so would be consistent certainly with the presumption that, upon removal of a case, all procedural matters are evaluated under federal law.  *See Rutherford*, 428 F. Supp. 2d at 854.  The Court will address Illinois law concerning severance of claims presently.

54, 56 (5th Cir. 1980) (an order granting separate trials pursuant to Alabama procedural rules did not sever claims and thereby create two separate lawsuits for purposes of removal in diversity). For example, in *Caldwell v. Alfa Insurance Corp.*, 806 F. Supp. 623 (S.D. Miss. 1992), the court held that a state-court order providing that a plaintiff's claims against a non-diverse defendant were "severed for trial purposes" from the plaintiff's claims against a diverse defendant did not permit removal of the claims against the diverse defendant. *Id*. at 624. "[G]iven a widely-recognized looseness in usage of the language" regarding severance, the court held, "[u]se of the word 'severed' is insufficient, in itself, to establish a Rule 21 severance." *Id*. at 625.[5]  Because it was not clear that the plaintiff's claims against the diversity-defeating party were not a part of the case, the court remanded the case to state court. *See id*. at 626.  As *Caldwell* illustrates, "[f]ederal district courts have … held that a defendant does not carry the burden of establishing federal jurisdiction where jurisdiction is predicated on a state court order that merely states that plaintiff's claims are to be 'severed' from claims against non-diverse defendants." *Grefer v. Travelers Ins. Co.*, No. Civ.A. 03-0253, 2003 WL 22717716, at *4 (E.D. La. Nov. 18, 2003) (holding that diversity jurisdiction was not established by a state-court order that provided only that the plaintiffs' claims against a non-diverse defendant "be and hereby are, severed from this action").

In *Johnson v. Snapper Division of Fuqua Industries, Inc.*, 825 F. Supp. 127 (E.D. Tex. 1993), the court discussed some factors to be considered in evaluating whether a state-court severance order has rendered a case removable in diversity, including:  (1) whether the severance "truly create[s]

---

5.    The *Caldwell* court appears to have tested severance in that case under Rule 21 of the Mississippi Rules of Civil Procedure.  *See* 806 F. Supp. at 624.  It is not especially material which set of procedural rules, state or federal, the court used because, as the court noted, the Mississippi rule is identical to Rule 21 of the Federal Rules of Civil Procedure.  *See id*. at 624 n.2.

different lawsuits, and not just separate trials in a single lawsuit"; (2) whether a non-diverse party has been removed to federal court together with a diverse defendant and whether the diverse party is participating in the pre-trial proceedings in the federal court, "leading to the conclusion that no true severance has taken place"; and (3) whether the state court severance has "result[ed] in entirely separate actions with separate judgments for the claims which are severed." *Id.* at 129 (citing *Phillips*, 625 F.2d at 56). The court found that all of the requirements were met by an "Agreed Order for Severance of Actions" entered in a state court containing the following provisions:

> (1) the [state] court found that there was no reason to delay the entry of a final judgment in favor of the [non-diverse defendant] based upon the granted motion for summary judgment; (2) the plaintiffs' claims against the non-diverse [defendant] were "severed … and made the subject of a separate action" under a new style and with a new cause number; and (3) separate judgments were to be entered in the severed cases, "each judgment to be final and to dispose completely of all issues between all parties in the respective suits."

*Id.* at 129-30 (footnote omitted). *Cf. Miller v. Fulton*, 113 F. Supp. 2d 1035, 1039 (S.D. Miss. 2000) (holding that a state-court order providing for "severance and separate trials" of claims against a diverse defendant and a non-diverse defendant did not permit removal of a plaintiff's claim against the diverse defendant, where the claims had not been separately docketed in state court and the plaintiff's claim against the non-diverse defendant had been removed together with the claim against the diverse defendant).

In this case there is no indication that the claims in the *Rutherford* case truly have been severed so as to render them separate judicial units. As discussed, the state court's order provides only that "the claims of plaintiffs Rutherford, Miechle, Garza, Brodhacker, Zola, Vogel, Benhoff, Smith, and Testa [as well as, presumably, Lane] are severed." Doc. 2, Ex. 2. Although it appears that a motion was filed in state court to consolidate the claims of the *Rutherford* plaintiffs, it is

unclear whether the proposed consolidation is simply a request for a joint trial of the claims or whether the claims actually have been severed into separate cases. It does not appear that the claims in the *Rutherford* case were separately docketed after the state court's order was entered, and the fact that the complaint attached to Merck's notice of removal is the original complaint in the *Rutherford* case, as well as the fact that Walgreens and Osco Drugs continue to be parties to this case and in fact have been removed to this Court, strongly suggests that they have not been. Resolving all doubts against removal, as the Court must, the Court cannot conclude on the state of the record that a severance has occurred and that diversity is complete. *See Kuntz v. Illinois Cent. R.R. Co.*, Civil No. 06-554-GPM, 2007 WL 54038, at *2 (S.D. Ill. Jan. 5, 2007) ("The removal statute, 28 U.S.C. § 1441, is construed narrowly, and doubts concerning removal are resolved in favor of remand."). *See also Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 846 (S.D. Ill. 2006) (in a case removed under 28 U.S.C. § 1442, noting that the Court had construed "[t]he rather sparse factual record developed by the parties regarding" the existence of federal subject matter jurisdiction in the case "in the light most favorable to remand while resolving all deficiencies in the record against … the proponent of removal[.]").

Finally, the Court's review of Illinois case law indicates that a true severance did not occur in state court so as to make this case removable in diversity. In *Carter v. Chicago & Illinois Midland Railway Co.*, 518 N.E.2d 1031 (Ill. 1988), the court observed that under Illinois law the term "severance" can arise in at least three distinct contexts. First, the *Carter* court noted, a trial court "may, in its discretion, 'order separate trial of any causes of action, counterclaim or third-party claim if it cannot be conveniently disposed of with the other issues in the case.'" *Id*. at 1036 (quoting 735 ILCS 5/2-614(b)). Second, under an Illinois civil procedure rule governing joinder of

plaintiffs, a state court may order separate trials "if …. it shall appear that joinder may embarrass or delay the trial of the action[.]"  *Id.* (quoting 735 ILCS 5/2-404).  Third, the *Carter* court held, a true severance of claims, as opposed to an order for separate trials, occurs when severance is ordered pursuant to an Illinois procedural rule providing that "[a]n action may be severed, and actions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right."  *Id.* at 1036-37 (quoting 735 ILCS 5/2-1006).  The *Carter* court observed that "[t]he term 'sever' is used broadly, and when a trial court orders an issue or claim severed, more often than not the court is simply providing for separate trials and has not determined that the claims thereafter should proceed as separate actions."  *Id.* at 1037.

Importantly, the *Carter* court created a presumption that, when an order purporting to sever claims does not specify that severance is effected pursuant to 735 ILCS 5/2-1006, it is not effected under that statute, so that the order instead is simply one for separate trials.  Specifically, the court held that, "regardless of the section of the [Illinois] Code [of Civil Procedure] relied upon by [a trial] court to bring about a separate trial of a claim or a counterclaim," a severance order will be deemed interlocutory and thus unappealable absent a certification of appealability

> unless the trial court, in its severance order, clearly and unequivocally states that the claim, counterclaim or the party has indeed been *severed* (in the narrow sense of that word) and that the severed claim, counterclaim or party shall proceed thereafter separate from the other claims, counterclaims or parties to the case.

518 N.E.2d at 1037 (emphasis in original).  The court noted further that, even when a trial court invokes 735 ILCS 5/2-1006 as the basis for severing claims, the order nonetheless "should provide … certainty" that a true severance has occurred or else the order will be deemed merely one for separate trials.  *Id.*  In light of the presumption created by *Carter* that an order of an Illinois state court providing for a "severance" of claims, without more, is deemed simply an order for separate

trials rather than a true severance, it is apparent in this instance that a genuine severance of claims in the *Rutherford* case was not effected in state court.

In sum, Merck has failed to show that Vogel's claims have been severed out of the *Rutherford* case. Thus, Vogel's claims remain joined with those of Rutherford and Miechle against Walgreens and Osco Drugs, defeating complete diversity of citizenship. In the Court's prior decision remanding the *Rutherford* case to state court, the Court held that it does not recognize the doctrine of so-called "fraudulent misjoinder" of parties or claims to defeat diversity jurisdiction. As the Court stated at that time, "[n]othing in the jurisprudence of the Supreme Court of the United States … suggests that the joinder of … claims" under state law "is a question that implicates the subject matter jurisdiction of a federal court," and the fraudulent misjoinder doctrine "is an improper expansion of the scope of federal diversity jurisdiction by the federal courts." *Rutherford*, 428 F. Supp. 2d at 851-52. That decision remains, of course, the law of the case, *see Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 457 (7th Cir. 2005); *Dudley*, 2007 WL 329129, at *4; *Hauck v. ConocoPhillips Co.*, Civil No. 06-135-GPM, 2006 WL 1596826, at *6 (S.D. Ill. June 6, 2006), from which Merck does not ask the Court to depart, and from which the Court does not intend to depart, in the absence of a controlling decision of the Supreme Court of the United States or the Seventh Circuit Court of Appeals. *See Hardaway v. Merck & Co.*, Civil No. 06-465-GPM, 2006 WL 2349965, at *3 (S.D. Ill. Aug. 11, 2006); *Bavone v. Eli Lilly & Co.*, Civil No. 06-153-GPM, 2006 WL 1096280, at *5 (S.D. Ill. Apr. 25, 2006); *Riddle v. Merck & Co.*, Civil No. 06-172-GPM, 2006 WL 1064070, at *8 (S.D. Ill. Apr. 21, 2006); *Rabe v. Merck & Co.*, No. Civ. 05-363-GPM, Civ. 05-378-GPM, 2005 WL 2094741, at *2 (S.D. Ill. Aug. 25, 2005). *See also Alegre v. Aguayo*, No. 06 C 5744, 2007 WL 141891, at **5-6 (N.D. Ill. Jan. 17, 2007); *Bird v. Carteret Mortgage*

*Group*, No. 2:06-cv-0588, 2007 WL 43551, at *5 (S.D. Ohio Jan. 5, 2007); *A. Kraus & Son v. Benjamin Moore & Co.*, No. CV 05-5487(ARR)(VVP), 2006 WL 1582193, at *5 (E.D.N.Y. June 7, 2006); *Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127-28 (C.D. Cal. 2004). *Cf.* 14B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, *Federal Practice & Procedure* § 3723 (3$^d$ ed. 1998 & Supp. 2007) (calling the holding of a leading decision regarding the fraudulent misjoinder doctrine "somewhat cryptic" and noting that the "doctrine and its allied jurisprudence adds a further level of complexity – and additional litigation – to a federal court's decision regarding removal jurisdiction."). Merck has failed to meet its burden to show the existence of federal subject matter jurisdiction in this case, so that the case will be remanded to state court.

### C.     Voluntary-Involuntary Rule

As a further basis for remand, the Court concludes that the removal of this case violates the so-called "voluntary-involuntary" rule, the federal common-law principle that only a voluntary action of a plaintiff, such as the voluntary dismissal of a diversity-defeating party, can make a case removable in diversity jurisdiction. *See Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 281 (1918) ("[C]onversion [of an action from non-removable to removable in diversity] can only be accomplished … where the case is not removable because of joinder of defendants, by the voluntary dismissal or nonsuit by [a plaintiff] of a party or of parties defendant."); *American Car & Foundry Co. v. Kettelhake*, 236 U.S. 311, 316 (1915) ("[W]here there is a joint cause of action against defendants resident of the same state with the plaintiff and a nonresident defendant, it must appear, to make the case a removable one as to a nonresident defendant because of dismissal as to resident defendants that the discontinuance as to such defendants was voluntary on the part of the

plaintiff[.]"); *Powers v. Chesapeake & Ohio Ry. Co.*, 169 U.S. 92, 101 (1898) ("[W]hen th[e] plaintiff [voluntarily] discontinued his action as against the [non-diverse] defendants, the case for the first time became such a one as … the [diverse] defendant … was entitled to remove[.]").   This Circuit is among those which hold that the judicially-crafted voluntary-involuntary rule remains viable in the context of removal to federal court.   *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71-72 (7th Cir. 1992) ("[C]ases with non-diverse parties [do] not become removable just because a non-diverse defendant [is] dismissed from the case . . . .  Instead, … such suits [are] removable only if the plaintiff voluntarily dismissed a non-diverse defendant.") (emphasis omitted).   *See also Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir. 1988); *In re Iowa Mfg. Co. of Cedar Rapids, Iowa*, 747 F.2d 462, 463-64 (8th Cir. 1984); *Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40 n.2 (2d Cir. 1980); *Self v. General Motors Corp.*, 588 F.2d 655, 658 (9th Cir. 1978); *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 546 (5th Cir. 1967); *American Dredging Co. v. Atlantic Sea Con, Ltd.*, 637 F. Supp. 179, 181-82 (D.N.J. 1986); *Pravic v. U.S. Industries-Clearing*, 109 F.R.D. 620, 621-22 (E.D. Mich. 1986).

The basis for the voluntary-involuntary rule frequently is identified as a narrowly pragmatic one, namely, ensuring that a federal court does not exercise jurisdiction in a removed case on the basis of an involuntary dismissal of a diversity-defeating defendant that is susceptible to reversal on appeal in state court.  As one court put it, "An involuntary dismissal of [a] non-diverse party in a state court action should not lead to removal of the action to federal court if the complete diversity just created by the dismissal might be destroyed by an appeal and reversal of the state court's decision."   *Atlanta Shipping Corp. v. International Modular Hous., Inc.*, 547 F. Supp. 1356, 1360 n.8 (S.D.N.Y. 1982).   *See also Quinn*, 616 F.2d at 40 n.2 (the purpose of the

voluntary-involuntary rule "is to protect against the possibility that a party might secure a reversal on appeal in state court of the non-diverse party's dismissal … producing renewed lack of complete diversity in the state court action[.]"); *LGP Gem, Ltd. v. Cohen*, 636 F. Supp. 881, 883 (S.D.N.Y. 1986) ("[T]he finality of the dismissal [of a non-diverse defendant], not the plaintiff's participation in it, is the factor that determines removability."); *Burke v. General Motors Corp.*, 492 F. Supp. 506, 508 (N.D. Ala. 1980) (the voluntary-involuntary rule "is premised upon the assumption that voluntary actions of the plaintiff which remove a party from a case are final" and thus not subject to reversal on appeal so as to divest a federal court of jurisdiction on removal); *Ennis v. Queen Ins. Co. of Am.*, 364 F. Supp. 964, 966 (W.D. Tenn. 1973) ("The reason for the 'voluntary dismissal' rule is based on judicial efficiency.  The voluntary dismissal of a resident defendant is not appealable. Such a dismissal finally determines who are the parties to the action in a state court proceeding immediately prior to removal to a federal court.  The involuntary dismissal of a resident defendant, however, is appealable.  Thus, an involuntary dismissal would involve the possibility of duplication and expense of an appeal being heard in state courts and the same proceeding being before the federal courts at the same time, if such a case could be removed to the federal courts.").

In fact, the foundation of the voluntary-involuntary rule is both broader and more fundamental.  Specifically, the purpose of the rule is to protect a plaintiff's right to choose his or her forum.  *See Kettelhake*, 236 U.S. at 315-16 (applicability of the voluntary-involuntary rule does not depend on the finality of a state-court order dismissing a diversity-defeating party and thus ostensibly giving rise to federal subject matter jurisdiction); *Lathrop, Shea & Henwood Co. v. Interior Constr. & Improvement Co.*, 215 U.S. 246, 251 (1909) (same); *Kansas City Suburban Belt Ry. Co. v. Herman*, 187 U.S. 63, 69 (1902) (same); *Whitcomb v. Smithson*, 175 U.S. 635, 638

(1900) (same).  The underlying purpose of the voluntary-involuntary rule is, quite simply, "to protect [a] plaintiff's choice of forum as long as [the plaintiff] wants it protected."  *Ford Motor Credit Co. v. Aaron-Lincoln Mercury*, 563 F. Supp. 1108, 1117 (N.D. Ill. 1983).  *See also Ushman v. Sterling Drug, Inc.*, 681 F. Supp. 1331, 1337 (C.D. Ill. 1988) (noting that, under the "majority rule" regarding the voluntary-involuntary rule, "the purpose of the rule is to protect [a] plaintiff's forum," and holding that "removal would not be allowed in this case [under the voluntary-involuntary rule] even if the state court proceedings were final."); *Jenkins v. National Union Fire Ins. Co. of Pa.*, 650 F. Supp. 609, 614 (N.D. Ga. 1986) (quoting *Alexander*, 246 U.S. at 282) ("What emerges from an examination of the Supreme Court cases on the voluntary-involuntary rule is the conclusion that the rule is not based upon an appealability/finality rationale but upon a policy of favoring the plaintiff's 'power to determine the removability of his case.'"); *Vidmar Buick Co. v. General Motors Corp.*, 624 F. Supp. 704, 706 (N.D. Ill. 1985) ("The underlying purpose of the voluntary/involuntary rule … is … to protect [a] plaintiff's choice of forum[.]").

In this case, as discussed, the basis for federal diversity jurisdiction is a contested severance of claims against diversity-defeating parties, Walgreens and Osco Drugs, in state court, therefore triggering the voluntary-involuntary rule.  *See Miller*, 113 F. Supp. 2d at 1039-40 (even if a state court had severed claims against a jurisdictionally diverse insurer from those against a non-diverse insured, remand to state court following removal by the insurer would have been warranted under the voluntary-involuntary rule, given that the plaintiff opposed the severance).  There is, of course, a well established exception to the voluntary-involuntary rule for cases involving alleged fraudulent joinder to defeat diversity jurisdiction.  Fraudulent joinder occurs when there has been actual fraud in a plaintiff's pleading of jurisdictional facts with respect to a non-diverse defendant or when, after

resolving all disputed issues of fact and law in a plaintiff's favor, a federal court nonetheless concludes that the plaintiff has no possibility of establishing a cause of action against a non-diverse defendant in state court. *See Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993); *Riddle*, 2006 WL 1064070, at *2; *Rutherford*, 428 F. Supp. 2d at 846. In *Poulos*, the Seventh Circuit Court of Appeals held that "the complete diversity rule and the voluntary/involuntary rule make it difficult for an out-of-state (diverse) defendant to remove a case to federal court if an in-state (non-diverse) defendant has ever been party to the lawsuit," but noted that "there is one more route to removal . . . . [i]f [a diverse defendant] can show that the joinder of [a non-diverse defendant] was fraudulent[.]" 959 F.2d at 72-73.

What this means is that the voluntary-involuntary rule is not a bar to removal in diversity if it can be shown that a non-diverse defendant whose involuntary dismissal in state court ostensibly rendered a case removable to federal court was in fact fraudulently joined to defeat diversity jurisdiction. For example, in *Poulos* the court held that the involuntary dismissal of a non-diverse corporate defendant in state court did not preclude removal under the voluntary-involuntary rule because the plaintiff had no possibility of establishing a cause of action under state law against that defendant, which the plaintiff was attempting to hold liable for the acts of a subsidiary and which therefore was shielded from liability under state law by the familiar doctrine of the corporate veil. *See* 959 F.2d at 73-74. As *Poulos* illustrates, fraudulent joinder is an exception to the voluntary-involuntary rule in the sense that a dismissal of a non-diverse defendant in state court will permit removal in diversity if the state-court dismissal is tantamount to a finding that "there [is] no possibility that the plaintiff could prove a cause of action against the resident defendant or that the plaintiff fraudulently pled jurisdictional facts in order to subject that resident defendant to the

jurisdiction of the state court." *Insinga v. LaBella*, 845 F.2d 249, 254 (11th Cir. 1988) (removal was not precluded by the voluntary-involuntary rule where a plaintiff had no possibility of establishing a cause of action in state court against a defendant who was properly dismissed in state court before removal on the grounds of sovereign immunity). *See also Arthur v. E.I. du Pont*, 798 F. Supp. 367, 369 (S.D.W.Va. 1992) (citing *Poulos*, 959 F.2d at 73) ("Fraudulent joinder … will be found when there is no … arguably reasonable basis for predicting that state law might impose liability on the facts involved . . . .  If a state trial court has dismissed the nondiverse defendant, the inquiry, similarly, is whether there is any reasonable possibility that such judgment will be reversed on appeal.").

In this case, nothing in the record suggests that, before the removal of Vogel's claims, the state court made any finding that the plaintiffs in the *Rutherford* case who have asserted claims against Walgreens and Osco Drugs cannot establish a cause of action under state law against those Defendants or have fraudulently pleaded facts to acquire jurisdiction over them in state court. Merck makes no argument that, under the traditional test of fraudulent joinder in this Circuit, Walgreens and Osco Drugs have been fraudulently joined and, in any event, the Court already has resolved that issue adversely to Merck, *see Rutherford*, 428 F. Supp. 2d at 846-50, a decision that, as discussed, is the law of the case at this juncture.  Rather, Merck argues that the voluntary-involuntary rule does not apply in this instance because Vogel's claims have been fraudulently misjoined with the claims of persons asserting state-law causes of action against Walgreens and Osco Drugs.  In effect, Merck asks the Court to craft, in addition to the exception to the voluntary-involuntary rule for fraudulent joinder, an exception to the rule for fraudulent misjoinder.  *See Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006); *Zea v. Avis Rent a Car*

*Sys., Inc.*, 435 F. Supp. 2d 603, 606 (S.D. Tex. 2006). However, as has been discussed, the Court simply does not recognize the fraudulent misjoinder doctrine. Just as the Court will not recognize the doctrine directly, by permitting removal on the basis of supposed misjoinder of claims, so the Court will not recognize the doctrine indirectly, by acknowledging it as an exception to the voluntary-involuntary rule. *See Murphy Constr. Co. v. St. Bernard Parish*, Civil Action No. 06-7614, 2007 WL 442231, at *3 & n.3 (E.D. La. Feb. 6, 2007) (citing *Crockett*, 436 F.3d at 533) (recognition of an exception to the voluntary-involuntary rule for fraudulent misjoinder is tantamount to recognition of the fraudulent misjoinder doctrine); *Accardo v. Lafayette Ins. Co.*, Civil Action No. 06-8568, 2007 WL 325368, at *3 & n.5 (E.D. La. Jan. 30, 2007) (same). The Court's position finds support in the text of *Poulos*, where the Seventh Circuit Court of Appeals, while recognizing traditional fraudulent joinder to defeat diversity as an exception to the voluntary-involuntary rule, nonetheless emphasized "our general desire to limit federal jurisdiction." 959 F.2d at 72. This Court shares, of course, the *Poulos* court's desire to limit federal jurisdiction, *see, e.g., Kim Littlefield, DMD, P.C. v. Orthodontic Ctrs. of Ill., Inc.*, Civil No. 06-606-GPM, 2007 WL 273766, at **3-4 (S.D. Ill. Jan. 26, 2007), and thus, consistent with the Court's refusal to recognize the fraudulent misjoinder doctrine, so the Court declines to recognize fraudulent misjoinder as an exception to the voluntary-involuntary rule.

Where the voluntary-involuntary rule applies to bar removal in diversity, the removal is procedurally defective, not jurisdictionally defective. *See Taylor v. Hayes*, Civ. A. No. 90-980, 1990 WL 192486, at *3 (E.D. La. Nov. 26, 1990). *See also Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 379-80 (7th Cir. 2000) (explaining that a procedural defect in removal is one that does not affect the subject matter jurisdiction of a federal court and hence the court's ability to entertain a case if

sued on originally in federal court); *Booth v. Furlough, Inc.*, 995 F. Supp. 629, 632 (E.D. Va. 1998) ("[A]ny defect in the removal process that does not go to the jurisdiction of the federal court to which the action is removed is [procedural].").[6]  A procedural defect in removal is waived unless objected to within thirty days from the date of removal.  *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."); *Fields v. Jay Henges Enters., Inc.*, Civil No. 06-323-GPM, 2006 WL 1875457, at *2 (S.D. Ill. June 30, 2006) (citing *In re Continental Cas. Co.*, 29 F.3d 292, 293-95 (7th Cir. 1994)) ("[A] procedural defect in removal … is waived unless raised by a plaintiff within thirty days of the date of removal.").  *See also Kitson v. Bank of Edwardsville*, No. CIV. 06-528-GPM, 2006 WL 4019180, at *2 (S.D. Ill. Nov. 16, 2006).  In this instance Vogel has raised a timely objection to removal on the basis of the voluntary-involuntary rule, and therefore the Court is constrained to remand this case to state court.  "The plaintiff has a right to remand if the defendant did not take the right steps when removing … and … a removed matter must be remanded if there are any defects in the removal procedure." *Yount*, 2006 WL 4017975, at *6.  Further, "[a] defendant seeking removal must strictly comply with all the statutory requirements, and where there is doubt as to whether the requirements have been satisfied, the case should be remanded." *Id*.  Vogel's motion for remand to Illinois state court will be granted on the alternate basis of the voluntary-involuntary rule.

───────────────

6.    It is the case that, as a general rule, diversity of citizenship must exist both when a suit is filed and when it is removed to federal court. *See Kanzelberger v. Kanzelberger*, 782 F.2d 774, 776-77 (7th Cir. 1986).  However, the purpose of this rule is to prevent a non-diverse defendant from acquiring a new citizenship after a suit is commenced, then removing in diversity. *See* 14B Wright, Miller, Cooper & Steinman, *Federal Practice & Procedure* § 3723.  "This danger is not present … when a nondiverse party simply is dropped from the case, because the defendant usually has no control over the elimination of parties." *Id*.

<u>CONCLUSION</u>

Merck's motion for a stay of this case (Doc. 3) and motion for a hearing (Doc. 16) are **DENIED**.  Vogel's motion for remand (Doc. 12) is **GRANTED**.  Pursuant to 28 U.S.C. § 1447(c), this case is **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, by reason of lack of federal subject matter jurisdiction and a procedural defect in removal.[7]

**IT IS SO ORDERED.**

DATED:  3/6/07

s/ *G. Patrick Murphy*

G. PATRICK MURPHY
Chief United States District Judge

---

7.    By separate orders, the Court will remand the claims of Smith, Brodhacker, Zola, Testa, and Benhoff for the reasons stated in this Order.